and we turn now to the third case on our calendar, USA v. Crumble, 19-1419. Mr. Urewicz? Yes, Your Honor. Good afternoon. May I proceed? Please. May it please the Court. My colleague, Matt Larson, will be arguing the sentencing issue. I wanted to focus on the fair trial and, time permitting, the extortion issue. Marcus admits that any objective review of the record in this case demonstrates that he was denied a fair trial and his right to the effective assistance of counsel. And Marcus' briefing demonstrates why that's so and how he was prejudiced. But I think one point, it's important for this Court not to lose sight of. There were multiple causes at work here, including the district court's insistence that the trial go forward quickly, defense counsel's distraction as a result of his wife's serious medical issue, and the government's taking advantage of defense counsel's lack of preparedness and his contumacious relationship with the judge. The common denominator of all of these factors is that none were the fault or cause by Marcus. As a result, whether or not the district court was correct when it observed that 12 weeks was enough time to prepare for the trial, the record is quite plain that defense counsel was unprepared and was distracted. Not only was this situation due to no fault of Mr. Marcus, but on multiple occasions he begged the court for either new counsel or an adjournment, both of which were ignored. Similarly, whether or not the government was correct that it was entitled to highlight defense counsel's streperous and deficient relationship with the court in its argument to the jury, one thing is certain. It was not Marcus's fault, and he should not be forced to suffer the consequences of defense counsel's failings. If the Sixth Amendment right to counsel in the CJA is to have meaning, this court should want to make clear that it takes these rights seriously, and in an appropriate case such as this one, it will grant relief. I mean, I've reviewed dozens of records and appeals before this court. The summation that took place in this court is sui generis. I've never seen something like it. It was not a very long summation by defense counsel, but literally every single page was filled with objections. There were sidebars. It's just, you know, this court has recognized, the Supreme Court has recognized the summation is a critical stage. And in this case, it was just, words can't express how bad it was. It just, you look page after page with, you know, defense counsel, he just couldn't get a word out really. And I think it's worth noting also that we're not talking about vacating conviction that will result in a lengthy retrial. There was less than a week here, this trial. And a retrial, if granted, will be a fairly quick proceeding. But I think this situation warrants it. We had a defense counsel. Doesn't that undercut the argument that defense counsel didn't have enough time if the trial itself took less than a week? Your Honor, that's what I said before. It may be that competent counsel would have had adequate time to prepare. But the reality is, counsel in this case did not prepare. Aren't these issues that we usually don't address in the first instance? I mean, they're better brought up in a collateral application where a better record can be developed. Your Honor, it is true that this court generally refrains from deciding an ineffective assistance claim for the first time on appeal. Here, however, the cold record speaks volumes. I mean, it doesn't take much imagination to see how contentious this matter was. And like I say, you know, this is what I opened in the brief. The government's conduct, the government's comments during summation, you know, says it all. I quote Mr. Hoffman's relationship with the transcript and his ability to accurately state the transcript is similar to his relationship and his ability to follow the judge's instructions in this case. I mean, that comment says it all. Do we really need a remand for an affidavit from defense counsel to demonstrate how bad this, you know, the conduct was in this trial? And so I don't I don't maybe one of the first times I've heard a defense lawyer on appeal say we should take the prosecutor's word for something. But I take it you are suggesting that the prosecutor was right. I mean, maybe the remark may have been inappropriate by the prosecutor, but you're not suggesting that. This is a case that should be reversed because of the misconduct of the prosecutor in making that remark. You're using this as evidence that defense counsel was incompetent. I agree that the comment was accurate. I don't think it was proper for the government to take advantage of that situation. And I think the defense counsel essentially invited it by by saying, as you may have noticed, I'm a zealous advocate. I yell and scream and can be annoying. Yes, Judge Tim, but that's that's what I that's what I'm trying to emphasize in the beginning here. I think at some point it's appropriate to separate out defense counsel and the defendant. The defendant is not in control of everything that his lawyer did. He received assigned counsel who was given, you know, who was basically given to him. He tried to get he asked the court on multiple occasions, give me different counsel, because he saw that this was a train wreck waiting to happen. And if defense counsel invites something. So what's a defendant to do? He can't be stuck with every bad decision that the that the defense counsel makes on his behalf. I think this court should recognize that. I see my time is up. If I could just make one point on the extortion, it's for better or for worse. There have been multiple prosecutions for conduct similar to this issue in the cases of robbing a drug dealer. This court, I think, should give clear direction whether such conduct such conduct constitutes robbery extortion. It can't be. But excuse me, why do you say that? I mean, I appreciate that somehow metaphysically in the eye of God, any given event is probably either extortion or it's robbery and it can't be both. On the other hand, we don't have the eye of God. We have a bunch of evidence. And just as you have evidence on which a reasonable jury could find guilt or innocence. Are you suggesting that there's not no such thing as a state of evidence on which if extortion is charged, a reasonable jury could find extortion. But if robbery were charged, a reasonable jury might have found robbery or on some other some other jury might have found the defendants not guilty of either. So why is it? In other words, yeah, I understand that conceptually the two are distinct and the twain don't meet, but we've got a bunch of facts. Some of them the jury might even not find as facts, but there's a lot of evidence in the jury considers in ways and reaches a conclusion and was properly instructed about what extortion means. So I'm just having a little trouble understanding. Is that not the question, whether a reasonable jury could find this to be extortion? But at some at some level, the court, that's the job of a rule. Twenty nine. The question is, is there sufficient evidence from which from which the jury can infer that the defendant, for example, the defendant, the victim's consent was saw or not? Well, but you but here we do have certain facts. Right. I mean, he resisted for a long time. Then he said, OK, they didn't take something from him, as was the case in. Is it Joe, the the Chinatown robbery case where the defendants ultimately ripped the chain off his neck? Nothing like that happened. He called up his girlfriend and told her to give the property to this fellow when he shows up. Now, granted, that consent was extorted from him. It was not a freely given consent, but that's the nature of extortion. So why couldn't a jury say, I think that fits the definition of extortion? Why isn't that a reasonable conclusion? I think the court is here. I don't think this was a question of whether they were. This is what I explained in my reply. They weren't seeking his consent. They could as soon as he walked into the car, according to the evidence, they beat him right away. They weren't looking for his consent. But no extortionist is. Right. I mean, an extortionist is trying to pressure somebody to give up property that that person is entitled to. And they're going to put that pressure on and pressure on. And then the person gives in at some point. I understand this is not an easy distinction to understand in all cases. But it is it is at a minimum different than taking something from the person or presence of another, which is part of the definition of robbery. Here it was. And this is this is you know, this was the the exact facts in Delva where the government charged robbery. And this court upheld the conviction. And maybe that's right. Maybe a reason. If the government had charged robbery, maybe a jury might have found them guilty of that. Or maybe it might have said if a defendant were bold enough to make this argument to a jury, which wasn't done in this case either. That no, that's not robbery. That's extortion. Or no, that's not. They haven't proven extortion because what they did here was they robbed him. You see. And that would be a legitimate thing to argue to a jury, I suppose. I believe both this court in Zao and in the Supreme Court in Ocasio has made clear that the two crimes are mutually exclusive, meaning the element of one involves an attempt to obtain consent and the other one doesn't. But the evidence, the evidence, the question is, is there enough evidence such that a jury could make one conclusion or the other? It's not a question of is it metaphysically one thing or the other? It's is this evidence on which a jury could find this crime? And I believe the answer is that in this case, the evidence was insufficient to find the consent. They could have found possibly a robbery, but they could not have found an extortion. No different than in the case of the mugger. When you say your money, your life, that's not extortion. When he pulls out his wallet. Thanks very much, Mr. We've given you a lot of extra time here. Thank you. Which we appreciate. And we'll turn to your counsel, co-counsel, I suppose. Matthew Larson. Mr. Larson. Thank you, Your Honor. Good afternoon. Matt Larson of the Federal Defenders for Mr. Crumble. Pain, the government agrees, is subjective. Some people have low tolerances. Some people have high tolerances. Given the record here, Mr. Nieves is in the latter camp. When Mr. Birch put an iron on Mr. Nieves' triceps, he said it was, quote, painful. He didn't say it was extremely, intensely, excruciatingly, or even very painful. Well, the photos, the photos would suggest that it was really painful, excruciatingly painful. Well, that was certainly the government's opinion, Your Honor. It said to Judge Ross, you know, the pain must have been extreme. The guy put an iron on his arm. That might strike you, Your Honor, as something that you would experience as extremely painful. It might strike me as something that I would experience. Do we look at this objectively or subjectively from the point of view of the victim? Or do we look at, do we look at a reasonable victim? We look at this absolutely subjectively, Your Honor. Well, did Mr. Nieves ever say, it was no big deal, it hurt, but I didn't really care that much? Did he disavow that it was exceedingly painful? He just wasn't asked, right? Again, that's an argument the government makes. He doesn't say that he didn't experience extreme pain. But, Your Honor, that argument is not persuasive because by the same token, he's not denying that he was sexually harassed or abused during this kidnapping proves that he was. The failure to deny that something happened doesn't mean that it happened. Excuse me. The question here is, what does a preponderance of the evidence show? Why can't an inference be drawn? I mean, I take your point that if we had a person who was neurologically incapable of feeling pain, and these various tortures were inflicted on such a person, maybe there's an argument there that it simply is not a case where this enhancement applies. But if someone is sort of too macho to admit it and doesn't want to say that it was exceedingly painful, I don't think we even have that here. He just wasn't asked to use a magic word. In that sort of case, couldn't a district judge on a preponderance of the evidence standard conclude that this must have been exceedingly painful because at least absent some evidence that this is a person who was neurologically impaired, that's what the common human experience would suggest, given what happened. We have evidence, Your Honor, along those lines, not of neurological impairment, but we have evidence of Mr. Nieves being in shock as to what was going on, his being very large, overweight, tall, too big, and even as the government says in its brief, his very calm demeanor, that's on page 73 of their brief, throughout this ordeal. There's no indication that he was just embarrassed to say that it really hurt a lot at trial when he was asked. What the record shows here is that he experienced pain, but what the evidence doesn't show is that he experienced something that he personally felt to be extreme. Mr. Larson, if I may, the district court made a finding on this question, right? Yes. You're just nodding silently. Yes, Your Honor, she did. Yes. And how do we evaluate that? How do we review the district court's finding on the question of extreme physical pain? Well, I have cited the cases, Your Honor, saying that the facts are undisputed, and the only question is whether the facts support a guideline enhancement. The review is de novo. The government's position is that this is a factual finding reviewed for clear error. Both parties, however, have said essentially the court doesn't have to decide that question because on either standard, either party either wins or loses. I think on the record here, I think this is an unusual enhancement, Your Honors. It's not about what would a reasonable person do. It's not an objective question. This is a weird enhancement because it's specific to a particular victim and what he or she subjectively feels. So it's very easy in a case like the one in the Tenth Circuit where the victim says, I felt extreme pain. In such a case, it's a no-brainer, and it wouldn't matter if the defense lawyer said, well, it couldn't have been that bad. It must have only been painful. Really? Do you think that's really right? If someone had a paper cut and they said, it was terrible, I've never experienced anything as bad as this in my life, that that would determine the issue. There would be no credibility judgment that a district court could make that, I'm sorry, I just don't buy it. The paper cut, that's a fair example, Your Honor. Something as trivial as that would raise a harder question. But in a case where an individual says, no, personally, this was extremely painful for me, they may have an explanation. They may be particularly susceptible. They may or may not. But my point is just, is this not obviously a fact-finding? It may be an incorrect fact-finding. It may be clearly erroneous as a fact-finding. But the issue of whether someone experienced pain, it's as much a statement of fact as a statement about his digestion. It's either true or it's not. You either find that as a fact or not. And the person's subjective report is obviously significant evidence on the subject. But I don't see that that's conclusive, that either that if someone says I experienced excruciating pain, then the enhancement applies without any inquiry into credibility. Or conversely, if someone fails to say that or even denies it, that the facts and circumstances could not lead a reasonable fact-finder to say that's, I don't know why he's saying that, but it's clearly not true. If this is a factual question, Your Honor, and therefore the review is clear error, the cases are also clear that something is clearly erroneous, a conclusion, if it's based on speculation rather than evidence in the record. The evidence in the record here is not disputed. An iron was applied to this gentleman's triceps, and he said it was painful. His demeanor throughout the ordeal was calm as the government concedes. On this record, it's only by speculating, as the government did in its sentencing brief to the judge, that, well, this must have been extremely painful, even though the victim didn't say that, even though his demeanor throughout the ordeal didn't indicate it. It must have been because to you and me, Judge, if we were touched by an iron, that would hurt a lot. But that's not the question on this weird enhancement. This weird enhancement is about what a person subjectively experiences, and on the evidence here. Hold it. Hold it. Let's just wait right there. I don't mean to interrupt you in any harsh way, but there's no other way electronically for me to cut in. I think, you know, you've reserved one minute, and we ought to hear from Benjamin Weintraub. Certainly. Thank you. Mr. Weintraub. Good afternoon, and may it please the court, Benjamin Weintraub for the United States. The court should affirm the appellant's Hobbs Act extortion convictions, as well as the district court's sentencing enhancement based on the serious bodily injury suffered by the victim, Daniel Nieves. The court should also reject Mr. Marcus's ineffective assistance of counsel claims and his claim that he was denied a fair trial. The district court's factual finding is judged by this court under the clear error standard, and the district court's finding that Mr. Nieves suffered serious bodily injury was not clearly erroneous. As noted at the appellant's sentencing by Judge Ross, Nieves was pistol whipped in the head multiple times, had a glass cup broken over his face, and was severely burned twice with a hot iron on bare skin. Anyone who has even inadvertently touched a hot iron can only imagine the extreme physical pain that Mr. Nieves suffered when he had a hot iron singed on his bare skin twice. But beyond common sense, the district court's decision was based on other ample evidence in the record, including Mr. Nieves' testimony, the testimony of his fiancée, who described having to dress the wound for multiple weeks, described Mr. Nieves having to sleep with his arms underneath pillows because the pain was so intense, and not just testimony but photos showing the raw skin and the lacerated lips in the days following the incidents, as well as a live demonstration by Mr. Nieves of the scars that remained on his arms months after the underlying events. While pain is subjective, it is not the only measure by which a district court can determine whether or not a victim suffered extreme physical pain such that the serious bodily injury enhancement would be justified. Moving on to the argument raised by Mr. Marcus regarding whether this was an extortion or a robbery, the fundamental distinction between a Hobbs Act extortion and a Hobbs Act robbery is whether the property at issue was taken against the owner's will in the case of a robbery, or with the owner's consent in the case of an extortion. Now, in this case, the victim faced a choice. It was, as the courts acknowledge, a Hobson's choice, no doubt, but it was a choice nonetheless. He was faced with the choice of deciding whether to continue to endure the heinous torture being inflicted upon him by the appellants, or whether to give them what they wanted, drugs and money. He chose the latter. He decided to call his girlfriend, he decided to come up with a ruse that the feds were raiding the area, and he decided to instruct her to give Ramel Marcus marijuana and thousands of dollars. There was no property taken from the person of either Nieves or his fiancee against their will. Under these factual circumstances, the facts describe an extortion under the statutory language, not a robbery. Finally, with respect to the ineffective assistance of counsel claim, trial counsel's performance was neither objectively unreasonable, nor was Mr. Marcus prejudiced by trials counsel's alleged deficiencies. With respect to the performance, trial counsel aptly ascertained that the most important part of this case was going to be the credibility of the government's witnesses, and trial counsel effectively cross examined those witnesses and undermined their credibility. The effectiveness of trial counsel's performance is only highlighted by the acquittal of Mr. Marcus of the most serious charge he was facing, the 924 C gun charge, which carried a mandatory seven-year sentence that would have run consecutively to any other sentence imposed on the kidnapping or the extortion charges. With respect to prejudice, there's no indication of what trial counsel would have done differently had he had more time, and it's indeed hard to imagine what he could have done differently that would have affected the outcome, given the strength of the government's case and the simplicity of the case. Nor did trial counsel's antagonistic relationship with the court prejudice Mr. Marcus. Nearly every instance of an antagonistic relationship between trial counsel and the court occurred outside of the jury's presence, either at sidebar where they could not hear the interaction or at conferences where the jury was not even in the room. Now with respect to the claim that Mr. Marcus did not receive a fair trial, in part because the district court declined to grant a continuance, the district court made clear multiple times that it was amenable to granting a continuance if the court heard that there was a justified reason for that continuance. The court repeatedly stated that this was a simple case. The discovery, 98.9% of the entire discovery was turned over by March 30th, before trial counsel's wife's medical issue arose, and with over a month and a half before trial. The 3500 material in this case was amongst the smallest 3500 material that the district court had ever seen. Time after time, trial counsel was given the opportunity to proffer a justified reason that he needed more time. Time after time, he was incapable of doing so. The district court's decision to decline to continue the case was not an abuse of discretion. And finally, it simply strains credulity to believe that the prosecutor's sole stray remark, perhaps inappropriately uttered, was such that it denied Mr. Marcus a fair trial. And that is what he would need to prove in order to have a vacater of his conviction. Any questions from Judge Lynch or Judge Chin? No. Okay, fine. Thank you very much. Thank you, Your Honor. We'll hear from Mr. Urowitz. Yes, just a couple of points. One, the government says that most of the comments were outside of the jury's presence, as we demonstrated repeatedly. You know, when they were at the sidebar, defense counsel was constantly admonished to keep his voice down. But it only just highlights the problematic nature of the government's conduct. Because if it was all outside the jury's presence, then they brought it to the jury's attention. Did Judge Ross give the standard instruction that whether you like the defense lawyer or not is not the issue, and if I ever said anything to any of these lawyers that gives you some idea that I have a view of the case, it's wrong because I don't, and you shouldn't take it into account anyway, and that sort of thing? I don't recall that instruction being given. Okay, we can find it if it's there, and if it's not, we'll find that it's not there. So go ahead, I don't want to interrupt. The other thing is defense counsel's inability to articulate why he needed more time. The review of the record is very simple. It's because he couldn't articulate it because he was totally unprepared. At trial, he admitted that for the first time, two days before trial, he subpoenaed the Imperial Hotel for the records for the full video. Despite the fact that he had these videos, according to the government, for three months already, it seems like the first time he was looking at them was right before trial. Basic cross-examination, he was unable to do. So yes, a defense counsel, maybe that's what I said. There may have been, objectively, three months may have been enough for this particular trial if you had defense counsel that was engaged. Here, defense counsel was completely unengaged, likely because his wife was distracted. I don't know, maybe he would have been incompetent regardless, but the point is, the reality is, he said it repeatedly. His wife went through a botched operation and she was going to be blind for the rest of her life, and now you're asking him to focus on a summation at a trial that he just wasn't prepared for, and it's evident in his summation that he just wasn't prepared to give that summation, which is why literally every page he was being, every other sentence, the government was objecting to it. So I think we have established prejudice because there are just so many things that defense counsel could have done, which he didn't, including the gates when he tried to impeach and he was unable to do that. So based on the totality of the evidence, yes, defense has established that he was deprived of fair trial. He was denied the effective assistance of counsel, and he was prejudiced by that. Thank you. I know I reserved a minute. I'm not sure. I think the clock is. Yes, go ahead, Mr. Lodge. Thank you, Your Honors. Just the last point that I started to talk about before. This is not a reasonable person test. This is a guideline that speaks of whether the victim sustained a serious injury defined here as extreme physical pain. There's no dispute here that Mr. Neves experienced pain. His arms had to be on those pillows. He said it was painful, but there's an enhancement for that. Applying that enhancement here would have resulted in a sentence range of roughly four or fewer years. The fact of the matter is the evidence in this case, as opposed to the speculation and the assumption of the government that will. He must have felt pain. Mr. Larson. Yes, Your Honor. What do you think you're. Let me ask you what remedy you seek from us. What's the decree from the Court of Appeals? It would be a remand and I would be happy with a remand for Judge Ross to reconsider whether she would impose a different sentence. I wouldn't I wouldn't even ask for a de novo resentencing. I would be happy. You didn't have a chance to ask her to reconsider. Well, we objected in trial court and she overruled the objection. So now, if you're if your honors agree that, in fact, the record evidence, as opposed to the government speculation, doesn't prove that Mr. Neves subjectively experienced pain that struck him as extreme, then Judge Ross should decide whether that would make a difference in the ultimate calculus. I'm just wondering whether this is not an exercise in futility. That is what what it is you think you're achieving. We'll only know by asking Judge Ross, Your Honor. OK, thank you very much. We reserve decision. We thank you. You and Mr. Eurowith and Mr. Weintraub very much. And we'll move to the next case, which is Milligan.